DECISION AND JOURNAL ENTRY
{¶ 1} Appellant, Guy Cheers, appeals from his murder conviction in the Lorain County Court of Common Pleas. We affirm.
 I. {¶ 2} On the evening of April 19, 2003, and into the early morning hours of April 20, 2003, a crowd of over 100 people were present at an after-hours bar in downtown Elyria, Ohio. A fight inside this bar caused many of these people to spill out into the street, where a second, larger fight erupted between many of the same participants. One participant in this fight was Andre Major, a 6'1", 280 lb., black male, who was reportedly manhandling several opponents, including Mr. Cheers, who was knocked to the ground by Major's hand to his face. Eventually, Major was struck and felled, and the crowd began to kick and beat him. His girlfriend, Lakishia Thomas, ran to his aid and in the frenzy he initially fought with her until she could wrestle him to safety away from the crowd.
 {¶ 3} At this point, someone shot Major in the neck from point-blank range. The bullet traveled downward through his torso and punctured his lungs, which filled with fluid and caused his death. Once recovered, the bullet was determined to be a 0.22 caliber bullet fired from a derringer model handgun, which does not eject a shell casing. According to certain witnesses, as Major and Thomas sat on the sidewalk recovering from the fight, Mr. Cheers had approached with a gun and shot Major in the neck. According to Mr. Cheers, however, he had merely fired his gun into the air to disperse the crowd, so that he could get close enough to partake in the kicking and beating of Major.
 {¶ 4} Eyewitnesses testified that two men brandished guns during the fight, that multiple shots were heard, and that the crowd fled almost immediately after the sound of gunshots. The other gunman was one Anetaeus Spencer, Mr. Cheers' cousin, who fired a 0.38 caliber semi-automatic handgun. That gun was eventually recovered and determined not to be the murder weapon. Mr. Cheers explained that his gun was a 0.25 caliber semi-automatic but, upon fleeing, he threw his gun into the river. Neither Mr. Cheers' gun nor any 0.25 caliber shell casing was recovered.
 {¶ 5} Based on the multiple witness statements, police arrested Mr. Cheers. The State indicted him for murder in violation of R.C. 2903.02(A), felony murder in violation of R.C.2903.02(B), and felonious assault in violation of R.C.2903.11(A)(1)-(2). All three charges included a firearm specification in violation of R.C. 2941.145. On February 9, 2003, a five day jury trial began. On February 13, 2004, Mr. Cheers was convicted on all three counts, but the trial court deemed the counts allied offenses and sentenced him accordingly.
 {¶ 6} Mr. Cheers appeals from his conviction, and asserts four assignments of error for review.
 II. A. First Assignment of Error
"The trial court erred when it denied defendant-appellant's motion to suppress identification testimony, thereby denying defendant-appellant his rights under the Fifth, Sixth andFourteenth Amendments to the United States Constitution and Article I, Section 10 of the Ohio Constitution."
 {¶ 7} Mr. Cheers alleges that the trial court erred by admitting witness identification evidence based on an impermissibly suggestive photo array. Specifically, Mr. Cheers argues that because he was the only person in the sixperson photo array who was actually at the scene of the crime, the array was so blatantly suggestive that it caused the witnesses to misidentify him as the shooter, and thus warrants a reversal of his conviction. We disagree.
 {¶ 8} Ohio has adopted the United States Supreme Court's two-part analysis for assessing a photo array: (1) whether the identification was unnecessarily suggestive of the suspect's guilt, and (2) whether the identification was ultimately unreliable under the circumstances. See State v. Waddy (1992),63 Ohio St.3d 424, 438-39. The United States Supreme Court has set forth a standard of review:
"[C]onvictions based on eyewitness identification at trial following a pretrial identification by photograph will be set aside on that ground only if the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification."Simmons v. United States (1968), 390 U.S. 377, 384,19 L.Ed.2d 1247.
The Court offered the following rationale for such a high threshold:
"The danger that use of the technique may result in convictions based on misidentification may be substantially lessened by a course of cross-examination at trial which exposes to the jury the method's potential for error." Id.
 {¶ 9} In the present case, Mr. Cheers explains that the witnesses were shown two separate six-member photo arrays and asked to identify the shooter. The first photo array contained among its six members the photos of Anetaeus Spencer and Quintin Lovett, both of whom were present at the shooting. The second photo array contained a photo of Mr. Cheers alongside five other unrelated men, none of whom were at the shooting. From this, Mr. Cheers contends that the witnesses were misled into identifying him as someone merely present at the crime scene, rather than identifying the actual shooter.
 {¶ 10} Mr. Cheers does not complain of any other deficiencies in the photo array; that is, he does not suggest that he stands out as unique in this photo array or that there are such drastic differences as to make the photo array impermissibly suggestive on its face. Therefore, because the witnesses testified as to Mr. Cheers' identification at trial, subject to cross-examination, reversal would be limited to a finding of a "very substantial likelihood of irreparable misidentification." Simmons,390 U.S. at 384.
 {¶ 11} The Ohio Supreme Court has described the procedure by which a court assesses reliability of the identification:
"Even if we were to accept [defendant's] contention that the lineups were unnecessarily suggestive, the identifications were nonetheless reliable under the totality of the circumstances. In order to determine the reliability of the identification, we must consider (1) the witness's opportunity to view the defendant at the time of the incident, (2) the witness's degree of attention, (3) the accuracy of the witness's prior description, (4) the witness's certainty when identifying the suspect at the time of the confrontation, and (5) the length of time elapsed between the crime and the identification." (Citations omitted.) State v.Davis (1996), 76 Ohio St.3d 107, 113.
In the present case, each of the four witnesses testified that they observed the shooting and the shooter while it happened. Each of the four provided a reasonable description of Mr. Cheers, including his yellow skin tone and red shirt, and three of the four identified Mr. Cheers by name before viewing the photo array. Upon being shown the photo array, each witness identified Mr. Cheers within seconds — identifications that were certain and unequivocal. At most, a matter of days had passed from the time of the shooting until the officers presented the photo array to the witnesses for identification. The totality of these factors confirms the reliability of the identification. See Davis,76 Ohio St.3d at 113.
 {¶ 12} From the above analysis, we conclude that the photo array used to identify Mr. Cheers was not unnecessarily suggestive, nor was the identification so unreliable as to "give rise to a very substantial likelihood of irreparable misidentification." Simmons, 390 U.S. at 384. Therefore, we find that the trial court did not err in denying Mr. Cheers' motion to suppress. Mr. Cheers' first assignment of error is overruled.
 B. Second Assignment of Error
"The trial court erred and denied defendant-appellant his constitutional right to a fair trial when it refused his request for a jury instruction on the inferior offense of voluntary manslaughter thereby violating defendant-appellant's rights under the Sixth and Fourteenth Amendments to the Ohio [sic] Constitution and Article I, § 10 of the Ohio Constitution."
 {¶ 13} Mr. Cheers asserts that the trial court erred by refusing to instruct the jury on a potential alternative finding of voluntary manslaughter, contending that the victim had initiated the violence by striking Mr. Cheers to the ground, which so enraged Mr. Cheers as to cause the shooting. Mr. Cheers argues that he deserves a new trial on this basis. We disagree.
 {¶ 14} The necessity of a particular jury instruction is a question of law to be reviewed de novo, unless the trial court's decision was based on the discretionary determination as to whether the evidence presented at trial was sufficient to require the particular instruction. State v. Lessin (1993),67 Ohio St.3d 487, 494. Where the question is one of supporting evidence, the trial court's determination will be overturned on appeal only upon finding an abuse of discretion. State v. Wolons (1989),44 Ohio St.3d 64, 68. An abuse of discretion is "more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable," Blakemore v.Blakemore (1983), 5 Ohio St.3d 217, 219; it is a "perversity of will, passion, prejudice, partiality, or moral delinquency."Pons v. Ohio State Med. Bd. (1993), 66 Ohio St.3d 619, 621. When applying the abuse of discretion standard, an appellate court may not merely substitute its judgment for that of the trial court. Id.
 {¶ 15} The Ohio Supreme Court has held that "voluntary manslaughter is an inferior degree of murder it is not a lesser included offense of murder." (Internal quotations and edits omitted.) State v. Powe, 9th Dist. No. 21026, 2002-Ohio-6034, ¶ 57, quoting State v. Shane (1992), 63 Ohio St.3d 630, 632. However, whether the trial court must give a jury instruction on voluntary manslaughter, when a defendant is charged with murder, is decided in the same manner as when a jury instruction on a lesser included offense is sought. Shane, 63 Ohio St.3d at 632.
 {¶ 16} Because a defendant is entitled to a jury instruction on a lesser included offense when the evidence presented at trial reasonably supports both an acquittal of the crime charged and a conviction of the lesser included offense, that defendant would likewise be entitled to an instruction on voluntary manslaughter when the evidence presented at trial reasonably supports the same. Id. However, merely having some evidence is not enough; sufficient evidence must be presented that would allow a jury to reasonably reject the greater offense and find the defendant guilty of the inferior-degree offense. Id. When making this determination, the evidence must be viewed in a light most favorable to the defendant. State v. Smith (2000),89 Ohio St.3d 323, 331, citing State v. Wilkins (1980),64 Ohio St.2d 382, 388.
 {¶ 17} R.C. 2903.03 defines voluntary manslaughter as knowingly causing the death of another "while under the influence of sudden passion or in a sudden fit of rage, either of which is brought on by serious provocation occasioned by the victim that is reasonably sufficient to incite the person into using deadly force." An objective standard is applied when determining whether provocation is reasonably sufficient to incite sudden passion or fits of rage. Shane, 63 Ohio St.3d at 634. "The provocation must be reasonably sufficient to incite the defendant to use deadly force. * * * [I]t must be sufficient to arouse the passions of an ordinary person beyond the power of his or her control." (Emphasis in original.) Id. at 635. Then, if the objective standard is satisfied, a subjective inquiry is made as to whether the actor was in fact under the influence of sudden passion or in a fit of rage. Id. at 634. "If insufficient evidence of provocation is presented, so that no reasonable jury would decide that an actor was reasonably provoked by the victim, the trial judge must, as a matter of law, refuse to give a voluntary manslaughter instruction." Id.
 {¶ 18} Certain situations have been regarded as cases in which voluntary manslaughter instructions are appropriate: assault and battery, mutual combat, illegal arrest, and discovering a spouse in the act of adultery. Id. at 635. This case involves one such factor, viewed either as an assault or mutual combat, and would thereby satisfy the objective standard. However, the evidence adduced at trial does not satisfy the subjective standard, as Mr. Cheers did not contend that he was provoked and actually protested that being thrown to the ground by Andre Major would not be enough to cause him to draw his gun or shoot. Furthermore, Mr. Cheers testified that he had entered the fight for no apparent reason, and others testified that he had left the fight for a period of time before returning to shoot Major. Therefore, we cannot find this provocation, as alleged at this late date, sufficient to warrant a reversal for lack of a voluntary manslaughter instruction. Accordingly, Mr. Cheers' second assignment of error is overruled.
 C. Third Assignment of Error
"Defendant-appellant was denied the effective assistance of counsel in violation of the Sixth and Fourteenth Amendments to the United States Constitution and Article I, section 10 of the Ohio Constitution."
 {¶ 19} Mr. Cheers alleges that his trial counsel was so ineffective as to render his conviction unjust, and points to certain instances during trial where his counsel failed to object as evidence of the purported ineffectiveness. Mr. Cheers reasons that, due to this perceived ineffectiveness, he deserves a new trial. We disagree.
 {¶ 20} The Sixth Amendment guarantees a criminal defendant the effective assistance of counsel. See McMann v. Richardson
(1970), 397 U.S. 759, 771, 25 L.Ed.2d 763. In determining whether the right to effective assistance of counsel has been violated, courts employ a two-step process:
"First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the `counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Strickland v. Washington (1984),466 U.S. 668, 687, 80 L.Ed.2d 674.
 {¶ 21} The defendant has the burden of proof, and must overcome the strong presumptions that counsel's performance was adequate and that counsel's action might be sound trial strategy.State v. Smith (1985), 17 Ohio St.3d 98, 100. Furthermore, an attorney properly licensed in Ohio is presumed competent. Statev. Lott (1990), 51 Ohio St.3d 160, 174. "Ultimately, the reviewing court must decide whether, in light of all the circumstances, the challenged act or omission fell outside the wide range of professionally competent assistance." State v.DeNardis (Dec. 29, 1993), 9th Dist. No. 2245, citingStrickland, 466 U.S. at 690.
 {¶ 22} In demonstrating prejudice, the defendant must prove that "there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different." State v. Bradley (1989), 42 Ohio St.3d 136, paragraph three of the syllabus. Although either step in the process may be dispositive, we will address the deficiency question first in this analysis, based on the particular errors Mr. Cheers claims in this appeal.
 {¶ 23} As a matter of law, an attorney's decision as to whether or not to object at certain times during trial is presumptively considered a trial tactic or strategy. State v.Fisk, 9th Dist. No. 21196, 2003-Ohio-3149, at ¶ 9, citing Statev. Phillips (1995), 74 Ohio St.3d 72, 85. In his brief to this Court, Mr. Cheers has identified three particular instances in which his defense counsel failed to object to certain questioning of Mr. Cheers by the State: (1) whether Mr. Cheers' past involved an extensive use of guns; (2) whether he had previously belonged to a gang; and (3) whether he knew that Anetaeus Spencer had implicated him as the shooter. Mr. Cheers also protests the State's reference to Mr. Cheers' history of gun use during closing argument. However, based on the standard set forth above, we cannot conclude, as a matter of law, that these failures to object constitute anything more than trial tactics or strategy. See Fisk at ¶ 9; Phillips, 74 Ohio St.3d at 85. Accordingly, these charges do not rise to the level of ineffective assistance of counsel. See Strickland, 466 U.S. at 687. Mr. Cheers' third assignment of error is overruled.
 D. Fourth Assignment of Error
"The verdict was against the manifest weight of the evidence."
 {¶ 24} Mr. Cheers contends that his conviction was against the manifest weight of the evidence. Specifically, Mr. Cheers asserts that the State neither reconciled the conflicting eyewitness testimony, nor explained how Mr. Cheers at 5'6" could have shot the 6'1" Andre Major in the neck at a downward trajectory, such that the bullet would travel down through his torso and perforate his lungs. Lacking sufficient evidence to overcome these claimed inconsistencies, Mr. Cheers contends that the State did not prove the necessary elements of murder. We disagree.
 {¶ 25} The Ohio Supreme Court has established the standard for reviewing an appellant's claim that the trial court decision was against the manifest weight of the evidence. "Judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence." C.E. Morris Co. v. Foley Constr. Co. (1978),54 Ohio St.2d 279, 280. Furthermore:
"In determining whether the judgment below is manifestly against the weight of the evidence, every reasonable intendment and every reasonable presumption must be made in favor of the judgment and the finding of facts.
"If the evidence is susceptible of more than one construction, the reviewing court is bound to give it that interpretation which is consistent with the verdict and judgment, most favorable to sustaining the verdict and judgment." (Quotations and edits omitted.) Seasons Coal Co. v. Cleveland (1984),10 Ohio St.3d 77, 80 n. 3.
That is, "a court of appeals [must] be guided by a presumption that the findings of the trier-of-fact were indeed correct." Id. at 80.
"The underlying rationale of giving deference to the findings of the trial court rests with the knowledge that the trial judge is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony." Id. See, also, State v. DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus.
Thus, reversal on manifest weight grounds is reserved for the exceptional case where the evidence demonstrates that the "trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed."State v. Otten (1986), 33 Ohio App.3d 339, 340. Accord Statev. Thompkins (1997), 78 Ohio St.3d 380, 387.
 {¶ 26} In the present case, the jury heard testimony from numerous witnesses. The State produced at least 11 witnesses, including eyewitnesses, police officers and investigators, and certain experts. Mr. Cheers produced two witnesses and himself, each of whose credibility was immediately challenged due to prior criminal history and partiality to the outcome of the proceeding. Once we acknowledge that such extensive testimony will almost inevitably produce some inconsistent or conflicting assertions, we recognize the sound principal that the trier of fact is best positioned to weigh the credibility of the individual witness and reach a conclusion based on the totality of the evidence. SeeDeHass, 10 Ohio St.2d at paragraph one of the syllabus.
 {¶ 27} Regarding the angle of entry of the deadly bullet, if we are "to give it that interpretation which is consistent with the verdict and judgment," Seasons Coal Co.,10 Ohio St.3d at 80
n. 3, then we must accept the rational inference from certain testimony that, at the moment the bullet struck him, Andre Major was sitting, kneeling, leaning or ducking. It was suggested during at least some testimony that, at the time of the shooting, Major was sitting on the curb with his girlfriend, recovering from the melee. Furthermore, based on the immediate proximity of the muzzle blast and the remarkably steep downward trajectory of the entrance wound, it is not reasonable to expect that only someone proportionately taller than the 6'1" Major could have been the shooter; to do so would require the shooter to be well over ten feet tall. While that would certainly limit the population of potential suspects, it would make any such analysis suspiciously unreasonable. Accordingly, we must reasonably conclude that at the time he was shot, Andre Major was so positioned that someone of ordinary height may have inflicted the deadly wound; someone as tall as the 5'6" Mr. Cheers.
 {¶ 28} Based on our review of the record and the arguments presented to this Court by the parties, we cannot conclude that the jury lost its way or created a manifest miscarriage of justice. See Thompkins, 78 Ohio St.3d at 387. Therefore, Mr. Cheers' fourth assignment of error is overruled.
 III. {¶ 29} Mr. Cheers' assignments of error are overruled. Mr. Cheers' conviction in the Lorain County Court of Common Pleas is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to Appellant.
Exceptions.
Slaby, P.J. Boyle, J. concur.